SOUTHERN            DISTRICT            OF FLORIDA

In a Matter Pending in the United States District Court
for the Southern District of New York

---

CASIO COMPUTER CO., LTD.

    Plaintiff,

v.

OSAMU SAYO, MITSUYUKI HASEGAWA,
THEODDOR TSURU, CRANEST INTERNATIONAL
INC., OCEAN VIEW MARKETING LIMITED,
EUGEN KAISER, RICHARD WOLPOW,
CHARIVARI CAPITAL CORPORATION,
JOANNE M. MARLOWE, CRANE LIMITED,
JOSEPH ROBERT KELSO, ASHMITA PATEL
and WAYNE NISHIYAMA,

    Defendants.

Case No. 98-7399-CIV-UUB
Magistrate Judge Bandstra

**AFFIDAVIT IN OPPOSITION
TO MOTION TO ENFORCE
THIRD PARTY SUBPOENA
AND FOR CONTEMPT**

---

STATE OF FLORIDA      )
                      ) ss.:
COUNTY OF PALM BEACH  )

    PIERRE GAUDREAU, being duly sworn, deposes and says:

    1.    I am the President of Third-party Witness, HIDEAWAY YACHT SALES, INC. ("HIDEAWAY"), am fully familiar with the facts and circumstances of this matter and submit this Affidavit in opposition to the motion by CASIO COMPUTER CO., LTD. ("CASIO") to enforce its Third-party Subpoena and for Contempt.

    2.    HIDEAWAY is a thriving Florida company, whose local yacht sales business is now being jeopardized by CASIO, a multinational corporation, which threatens

NON-COMPLIANCE OF S.D. fla. L.R. 5.1.A.1.

to interfere with HIDEAWAY's customers under the guise of conducting discovery. The device for this conduct is a Third-party Subpoena which seeks, in part, information which is both irrelevant and immaterial.

3. To the extent that the Subpoena seeks relevant information, HIDEAWAY has responded in full, having already produced approximately one hundred (100) pages in response thereto. HIDEAWAY has resisted the CASIO subpoena solely to the extent that it seeks information concerning the sale of a specific "Sunseeker Predator 80" yacht (the "Yacht") to a valued customer (the "Buyer") of HIDEAWAY. This customer has no relationship whatsoever to any of the defendants in the New York RICO action (the "New York Action") in which the subpoena was issued. It is respectfully submitted that no further disclosure should be required given the complete lack of relevance of the additional material sought by CASIO.

4. Moreover, the production sought is extremely troublesome to HIDEAWAY because it will, by necessity, imperil HIDEAWAY's long-standing relationship with a valued customer and is likely to severely harm its business by jeopardizing its relationship with other customers, both present and future, who may be unwilling to deal with HIDEAWAY if such dealings are not private. Given the irrelevant nature of the discovery sought, HIDEAWAY should not have to suffer this potentially irreparable burden.

5. The underlying facts are as follows. On or about September 26, 1997, HIDEAWAY entered into a contract with THEODDOR TSURU ("TSURU"), one of the defendants in the New York Action. (A copy of the contract is attached hereto as Exhibit "A".) At the time, HIDEAWAY had no knowledge of TSURU's relationship with CASIO, nor did it have any involvement in the transactions underlying the New York Action.

6. As the Contract indicates, the original purchase price for the Yacht was $3,206,000.00 with a final price after modifications of $3,359,331.00. The contract required TSURU to make certain deposits and payments, which could be retained by HIDEAWAY as liquidated damages in the event of a default.

7. TSURU subsequently defaulted and, accordingly, HIDEAWAY retained the monies so paid under the Contract (approximately $1.3 million) as liquidated damages.

8. On or about August 20, 1998, CASIO commenced an action against HIDEAWAY, in Circuit Court, Broward County, Florida, seeking the return of the $1.3 million partial payment. Notwithstanding the filing of the Florida State Court case, CASIO continues to press HIDEAWAY for compliance with the subject Subpoena.[1]

9. It is respectfully submitted that the Buyer has no relationship to TSURU or any of the other defendants in the New York Action; and that the proposed discovery is irrelevant and immaterial, and is quite likely to substantially damage HIDEAWAY.

10. I met the Buyer for the first time approximately six (6) or seven (7) years ago at a Florida Boat Show. This is at least six (6) years before I ever met or heard of TSURU. The Buyer was and is a respected businessman who, among other activities, is the principal of a company that owns and operates a number of radio stations.

11. Over the years, the Buyer had owned several "Searay" yachts, an American made product. Although admiring its features, the Buyer always hesitated to buy

---

[1] Except as indicated herein, all other objections to the Subpoena are not being pursued by HIDEAWAY and are hereby withdrawn.

3

a "Sunseeker," which was manufactured in England. He was skeptical of the ability of an American based dealership to satisfactorily service and repair a foreign made yacht.

12. In July, 1998, the Buyer, along with his wife, visited that year's Boat Show in Florida. He had sold his interests in some of his radio stations and was in the market for a new boat. He was still enchanted with the "Sunseeker," so I showed him the boat that was now available because of TSURU's default. Promptly following a successful sea trial, the Buyer purchased the Yacht for several hundred thousand dollars less than the Contract price.

13. Inasmuch as there was no relationship between the Buyer and TSURU or any of the other defendants in the New York Action, the discovery sought by CASIO is entirely irrelevant.

14. Despite being unable to show any connection to the New York Action, CASIO continues to insist that the ultimate disposition of the Yacht is relevant. In this regard CASIO speculates, without any evidentiary support whatsoever, that: "If one of the Defendant's insiders purchased the yacht, and thereafter funneled the proceeds to Tsuru, that fact would be extremely relevant and could lead to the recovery of Casio's funds." (See Casio's motion at p. 6.)

15. Casio's speculation is absurd on its face. First, the Yacht was sold to the Buyer for its then retail market value – and no discount was given that reflects receipt of TSURU's forfeited down payment. Moreover, the proceeds of the sale went to HIDEAWAY, not to some supposed TSURU insider.

16. It must be understood that the boat market is similar to the automobile market in that substantial value is lost immediately after each purchase and the boat or auto is considered "used." There is no market to resell the "used" yacht at a profit, which would throw

4

off additional proceeds. Indeed a resale could only be for less money. This being so, CASIO's speculation that the Buyer of the Yacht sold it so that he could raise funds to transfer to TSURU makes no sense. Why would anyone, with $3 million + in hand, spend that money on a yacht, so that he could then sell the now used yacht to get the a lesser sum back? Such a scheme would be worthy of the comedians, ABBOTT and COSTELLO ,who would exchange two (2) dimes for a nickel.

17. Even assuming that this absurd scheme is a possibility, why would a confederate of TSURU attempt it with this particular yacht? If TSURU's agent, or some affiliate, were to purchase a boat for resale, it could be any boat from any dealer. The fact that TSURU may have attempted, *but failed*, to purchase the Yacht does not give CASIO the right to involve HIDEAWAY and its innocent Buyer in CASIO's lawsuit against TSURU.

18. Nor does CASIO's allegation that TSURU and his confederates were transferring stolen money among them provide justification for the discovery sought. On that theory, CASIO could seek discovery from *anyone* who made a substantial purchase from anyone, anywhere. Such a proposition is meritless and baseless in law and fact.

19. It should also be noted that HIDEAWAY would incur severe harm if the Buyer were to be dragged into CASIO's lawsuit. HIDEAWAY's business depends on a high volume of dollars received from relatively few customers, many of whom know each other and appreciate their privacy. There are only a limited number of people who can afford the purchase of a $3 + million dollar yacht, and HIDEAWAY's future success rests on the good will and word of mouth generated by that small customer base. Accordingly, should the Buyer be needlessly contacted by CASIO, HIDEAWAY stands to lose not only one (1) customer, but substantial future sales as well. Indeed, HIDEAWAY's entire business might be threatened.

20. Given the lack of relevancy or materiality of the discovery sought and the severe prejudice to HIDEAWAY should the material be revealed, there is no sound basis for the enforcement of CASIO's subpoena. The emphasis placed on this obviously irrelevant discovery leads one to believe that CASIO has an ulterior motive – that being to harass HIDEAWAY's customers in order to force HIDEAWAY to settle CASIO's claim.

21. So that there can be no doubt that the material sought will not lead to the discovery of relevant evidence, however, HIDEAWAY is amenable to submit all withheld documents to the Court for its *in camera* review. Thereafter, the Court can determine whether the documents point to any connection with TSURU, and can withhold them from discovery if they do not. Alternatively, HIDEAWAY stands ready to produce the documents if CASIO will agree that neither the Buyer nor any other person shall be contacted, directly or indirectly, without further order of this Court. In that way, CASIO can assure itself that the Buyer is not one of the New York Action defendants or an affiliate, without damaging HIDEAWAY's business.

**WHEREFORE**, HIDEAWAY respectfully requests that this Court deny CASIO's motion, in all respects, and award HIDEAWAY such further relief as the Court deems just and proper under the circumstances.

_____
PIERRE GAUDREAU

Sworn to before me this
____ day of January, 1999

_____
NOTARY PUBLIC – STATE OF FLORIDA

ADAM S. GUMSON
My Commission Expires Feb. 1, 2001
Commission No. CC604945

NOTARY'S NAME PRINTED, STAMPED OR TYPED

6